UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **NATHANIEL M. SMITH** | : | **DOCKET NO. 15-cv-2892** |
| **DOC # 476447** | | **SECTION P** |
| **VERSUS** | : | **JUDGE TRIMBLE** |
| **WARDEN COOLEY ET AL.** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is a Motion for Summary Judgment [doc. 26] with a request for costs filed pursuant to Rule 56 of the Federal Rules of Civil Procedure by defendants Warden Cooley, Yusof Abdullah, Vertis March, Anthony Allemand, and Ed Shirley (collectively, "defendants") in response to the *pro se* civil rights complaint [doc. 1] brought by plaintiff Nathaniel Smith ("Smith"). Smith is an inmate in the custody of the Louisiana Department of Public Safety and Corrections ("LADPSC"), which is also named as a defendant. He is proceeding *in forma pauperis* in this matter and opposes the motion for summary judgment. Doc. 30.

For the following reasons, **IT IS RECOMMENDED** that the Motion for Summary Judgment [doc. 26] be **GRANTED** and that all claims against defendants Cooley, Abdullah, March, Allemand, and Shirley be **DISMISSED WITH PREJUDICE**. It is also **RECOMMENDED** that the request for costs be **DENIED**. Finally, for reasons provided herein, **IT IS RECOMMENDED** that all claims against the LADPSC be **DISMISSED WITH PREJUDICE** and that the case be closed.

# I.
## BACKGROUND

Smith's complaint relates to his time at Allen Correctional Center ("ACC") in Kinder, Louisiana. Doc. 1. From the time of filing until the date of this opinion, he has been incarcerated at Raymond Laborde Correctional Center (formerly known as Avoyelles Correction Center) in Cottonport, Louisiana. Doc. 1, p. 2.

While at ACC Smith, who professes to be an adherent of the Nation of Islam ("NOI"), requested separate group worship accommodations for NOI Muslims. *Id.* at 4; *see also* doc. 26, att. 3, p. 1 (affidavit of Warden Keith Cooley). Pursuant to this request Smith states that he met with ACC chaplain Vertis March, ACC officer Anthony Allemand and ACC Islamic chaplain Yusuf Abdullah, and at a later date with Allemand, ACC officer Ed Shirley, and ACC Warden Keith Cooley, at which Smith again stated his case for separate worship accommodations. Doc. 1, pp. 4–6. He alleges offensive remarks on behalf of Allemand about the NOI and that Abdullah argued with him over whether separate services were required. *Id.* Smith also states that he supplied a list of inmate NOI adherents in support of his request during the first meeting, and that March, "[a]fter briefly going over the names . . . began to say who wasn't Muslim [and] who was Christian . . . ." *Id.* at 4. Finally, he states that he provided documents describing NOI's status as a religion at the second meeting but that Cooley did not look at the documents and Shirley only glanced briefly at them before positing that Smith "could've [drawn] this up." *Id.* at 6.

Abdullah then provided his opinion to Cooley that ACC already provided adequate weekly religious services for all Muslims, including NOI adherents, and that providing separate services for NOI adherents would lead to division and confusion among the Muslim groups at ACC. Doc. 1, p. 6; doc. 26, att. 3, p. 1; doc. 26, att. 4, p. 1 (Abdullah affidavit). Based on Abdullah's opinion

and other penological considerations, Cooley denied Smith's request.[1] Doc. 26, att. 3, p. 1. However, Cooley maintains that Smith remained free to participate in existing Muslim worship services or to practice his religion independently. *Id.*

Smith requests monetary and injunctive relief for the alleged constitutional violations described above. Doc. 1, p. 7. Defendants Cooley, Abdullah, March, Allemand, and Shirley now move for summary judgment, alleging that 1) Smith has failed to establish a constitutional violation, 2) because Cooley was the only defendant empowered to grant Smith's request, Smith cannot show a constitutional violation by the other defendants, and 3) Smith's claims for injunctive relief are rendered moot by his transfer from ACC. Doc. 26, att. 1. Smith opposes the motion.[2] Doc. 30.

## II.
### LAW & ANALYSIS

### A. *Motion for Summary Judgment*

#### 1. *Summary Judgment Standard*

---

[1] In addition to Cooley's account of the factors he considered, Allemand, March, and Shirley all state that they did not have the authority to grant or deny Smith's request. Doc. 26, atts. 5–7. They also declare that, to their knowledge, Cooley based his decision on Abdullah's advice. *Id.*

[2] In his opposition Smith attempts to add several new legal theories, including embezzlement, negligence, and violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq*. Smith brought this action under 42 U.S.C. § 1983, which, as described *infra*, relates to constitutional violations. He is not permitted to add new legal theories without seeking leave of the court. However, the Fifth Circuit provides that new claims or legal theories raised in response to a dispositive motion should generally be construed as a request for leave to amend, and the court should thus determine whether leave should be granted. *See Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n. 2 (5th Cir. 2008) (collecting cases).

Generally, the court should freely give leave to amend pleadings before trial when justice so requires. FED. R. CIV. P. 15(a)(2). However, the Fifth Circuit also guides us to "more carefully scrutinize[] a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a motion for summary judgment." *Squyres v. Heico Companies, LLC*, 782 F.3d 224, 239 (5th Cir. 2015) (quoting *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999)). When the plaintiff seeks leave to amend after the defendant has moved for summary judgment, "to grant . . . leave to amend is potentially to undermine [the opposing party's] right to prevail on a motion that necessarily was prepared without reference to an unanticipated amend[ment]." *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1151 (5th Cir. 1990).

Here Smith fails to present any justification for the late addition of these new legal theories. He has had ample time to conduct research and seek leave to amend his complaint prior to the defendants' motion for summary judgment. Accordingly, we will not allow him to amend at this stage and will only review the motion as it applies to the legal theories articulated in his complaint.

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2553 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id*.

Once the movant makes this showing, the burden then shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2510 (1986). The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law. *Celotex Corp.*, 106 S.Ct. at 2553. There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 106 S.Ct. at 2511.

*2. Section 1983*

Smith brings this suit under 42 U.S.C. § 1983. Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. Thus, an initial inquiry in a lawsuit filed under § 1983 is whether a plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation has been alleged, there is no cognizable claim under § 1983. In order to hold defendants liable under 42 U.S.C. § 1983, a

plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of state law, that is, that the defendant was a state actor. *West v. Atkins*, 108 S.Ct. 2250, 2254–55 (1988).

### 3. *Application*

We first consider defendants' argument that the allegations here do not show a constitutional violation,[3] as this question is dispositive for all of Smith's claims in the instant motion.[4]

Constitutional claims that would otherwise receive strict scrutiny analysis are evaluated under a lesser standard of scrutiny in prison settings. *Turner v. Safley*, 107 S.Ct. 2254, 2257 (1987). A prison action is valid, even if it restricts a prisoner's constitutional rights, so long as it is "reasonably related to legitimate penological interests." *Id.* at 2260–61 (quotations omitted). In making such a determination, courts in the Fifth Circuit consider the following factors:

> (1) whether a valid and rational connection exists between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact of the accommodation on prison guards, other inmates, and the allocation of prison resources generally; and (4) whether there are "ready alternatives" to the regulation in question.

*Baranowski v. Hart*, 486 F.3d 112, 120 (5th Cir. 2007) (citing *Turner*, 107 S.Ct. at 2262).

The Fifth Circuit has previously considered whether a prison's refusal to grant separate services for NOI Muslims violates a prisoner's constitutional rights when generic Islam services are already available. *See Jones v. Shabazz*, 352 Fed. App'x 910, 915 (2009) (unpublished). There the court held that that there was no constitutional violation because "the defendants have provided

---

[3] In his complaint Smith does not allege a particular constitutional violation, but his response indicates that he is asserting either a First Amendment violation or violation of the Fourteenth Amendment Equal Protection Clause. The particular violation alleged does not alter our analysis under *Turner* and *Baranowski*, *supra*.

[4] The defendants appear to be under the impression that Smith only seeks injunctive relief, as they argue that his transfer from ACC renders all claims moot. Doc. 26, att. 1, pp. 4–5. This is not the case. Smith also seeks two million dollars in damages. Doc. 1, p. 7.

ample evidence demonstrating that [their] decision to refuse specialized services for NOI Muslims was based upon both security concerns and resource limitations [and] NOI inmates may still exercise their religious rights through the weekly group worship meetings." *Id.*

Here as well Cooley has advanced valid concerns relating to institutional security and resources for denying separate services. Despite the alleged offensive comments and accusations of insincerity, there is no evidence that these concerns played a determinative role in Cooley's decision-making process. As the defendants point out, Smith is still free to worship individually or to participate in generic Islam services. Accommodating Smith's request, as outlined by Abdullah and Cooley, would not only strain prison resources but also lead to potential division and confusion within the prison's Muslim population. Finally, Smith points to no ready alternatives that would accommodate his request for separate group worship while still avoiding the security and resource concerns outlined above. Therefore Smith fails to show a constitutional violation on the part of the defendants, and so the defendants are entitled to summary judgment on Smith's § 1983 claims against them.

### B. *Request for Costs*

The defendants also request that the Smith be assessed costs incurred from his claims. Under the Federal Rules of Civil Procedure, costs (not including attorney's fees) in a judgment should be awarded to the prevailing party unless barred by some other statute. FED. R. CIV. P. 54(d)(1). For plaintiffs proceeding *in forma pauperis*, "judgment may be rendered for costs . . . as in other cases" at the court's discretion, subject to the limitation that only the plaintiff and not the government will not be liable for any of the costs incurred. 28 U.S.C. § 1915(f); *see also Moore v. McDonald*, 30 F.3d 616, 621 (5th Cir. 1994). An award of costs is not limited to findings of frivolity. *E.g.*, *Lay v. Anderson*, 837 F.2d 231, 232 (5th Cir. 1988). However, we recognize its

punitive effect and decline to exercise it here without a greater showing of bad faith or abuse of process. It is therefore recommended that the request for costs be denied.

### C. *Claims Against Department of Public Safety and Corrections*

Finally, Smith has also named the LADPSC as a defendant in his caption, though he does not actually state any claims against that entity. Doc. 1, pp. 1, 3. LADPSC has not been served to date and was not included in this court's order directing service. *See* doc. 9. To the extent that Smith did intend to raise any claims against the LADPSC, we review them now under our authority to screen complaints filed *in forma pauperis* and dismiss them at any time if we find that the action is frivolous, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915e)(2)(B).

Any claim asserted by Smith against the LADPSC in this matter must be dismissed for two reasons. First, the LADPSC is a state agency and therefore not a "person" subject to suit under § 1983. *E.g.*, *Hyatt v. Sewell*, 197 Fed. App'x 370 (5th Cir. 2006) (unpublished); *Cronen v. Texas Dep't of Human Svcs.*, 977 F.2d 934, 936 (5th Cir. 1992). Second, claims against Louisiana state agencies are barred by the Eleventh Amendment. As the Fifth Circuit notes:

> When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity. By statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal courts. *See* LA. REV. STAT. ANN. § 13:5106(A).
>
> Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power. We note that in enacting § 1983, Congress did not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the states.

*Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 280–81 (5th Cir. 2002) (quotations and citations omitted). Therefore the case should also be dismissed as to LADPSC

should also be dismissed pursuant to § 1915(e)(2)(B) for failure to state a claim and for seeking monetary relief from a defendant who is immune from suit.

### III.
#### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the Motion for Summary Judgment [doc. 26] be **GRANTED** and that the claims against Cooley, Abdullah, March, Allemand, and Shirley be **DISMISSED WITH PREJUDICE**. It is also recommended that claims against the Louisiana Department of Public Safety and Corrections be **DISMISSED WITH PREJUDICE** and that the request for costs be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE this 21st day of March, 2017.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE